ALTENBERND, Judge.
The Department of Children and Family Services appeals the trial court’s order dismissing the Department’s dependency petition against D.B. The dismissal occurred after a series of hearings in which there was confusion as to whether the court was conducting a hearing on the admissibility of hearsay testimony or a trial on the merits of the case or both. At the conclusion of the last hearing, the trial judge dismissed the Department’s petition. The trial judge’s comments at that time suggest that he dismissed the case because he concluded, as a matter of law, that the acts alleged to have given rise to the petition did not constitute abuse, and therefore the Department had not presented a prima facie case to support an adjudication of dependency. Based upon these comments, we reverse. Given the procedural confusion and the passage of time, we remand for a new adjudicatory hearing on the petition.
D.B. is the unmarried father of A.B., a girl who was six years old at the time of the events giving rise to this action. Apparently D.B. had unsupervised visitation with the child by virtue of a court order in a separate family law proceeding, but that order is not in our record. These proceedings began in May 2005 when the Department filed a petition for emergency shelter placement. The Department sought to shelter the child with her mother, who already was her primary residential parent. For practical purposes, then, the emergency shelter petition merely suspended visitation between the father and daughter. Nothing in the record suggests that the mother sought any modification of the father’s visitation rights in the family law proceeding. At the same time that these proceedings commenced, the State brought criminal charges against D.B.
The Department sought an order adjudicating A.B. dependent as to D.B. based upon allegations that D.B. had digitally penetrated his daughter when he was exercising his visitation rights and was alone with his daughter. A.B. had provided various hearsay statements to different individuals claiming that these events occurred. D.B. defended himself by arguing essentially that he had a bad relationship with one of the maternal relatives, that this person made false claims against him in the past, and that this person influenced his daughter to make false claims of sexual abuse in this case.
The parties appeared for trial on October 18, 2005. The Department’s dependency case hinged upon the admissibility of the child’s hearsay statements to various individuals, but most specifically upon a videotaped interview that had occurred at the Children’s Justice Center. On the morning of trial, the judge learned that the Department had not sought to address the admissibility of these statements prior to trial, and thus this issue had to be resolved either before the scheduled trial began or as a part of the trial proceedings.
From this point on, through a series of hearings occurring from October 18, 2005, until December 2005, it was never completely clear if the court understood whether it was proceeding solely upon the admissibility of the hearsay evidence, the merits of the trial, or both.
At one hearing, the Department attempted to present the testimony of the child through closed circuit television. After a short series of introductory ques *573 tions, the child testified that she had never experienced a “bad touch” and provided no audible answer to the question, “Has your father ever touched you with a bad touch?” The questioning ended shortly thereafter, and there was no cross-examination. The court permitted a recess, during which the parties were directed to research whether the Department could present a prima fa-cie case through admissible child hearsay in light of the child’s video testimony. When the parties returned after the recess, however, there was no argument presented on this issue. Instead, the court heard further evidence at this time and at a subsequent hearing that was relevant both to the admissibility of the child’s hearsay statements and the merits of the Department’s petition.
At a hearing on October 31, 2005, the Department indicated that it had presented all of the evidence it intended to present. The trial judge indicated he would take the issue of the admissibility of the child’s hearsay statements under advisement. The following exchange then occurred:
THE COURT: ... When is the trial?
[COUNSEL FOR D.B.]: I don’t think we had a date. I mean, it was set at the same time—
[COUNSEL FOR THE DEPARTMENT]: We have already taken some testimony but it was conditioned — everything else was conditioned upon your ruling—
[[Image here]]
[COUNSEL FOR THE DEPARTMENT]: [Counsel for D.B.] has indicated to me ... that he would have no objection to the Court taking the evidence that had already been provided to the Court in the motion towards the trial itself.
[[Image here]]
THE COURT: Right. Okay. Let’s do this. Let me give you a date of November 17th for my ruling on this matter. I may have it done sooner than that. It’s required by rule I do it in writing, so I’ll have it prepared by then and then we’ll set trial — to continue the trial — we’ll set a date after that.
The record does not contain a transcript of a hearing on November 17. On November 23, however, the parties appeared at a hearing and the court issued a written ruling on the admissibility of the child hearsay. The trial court found that some of the statements were reliable and thus admissible — most notably, the child’s statements in the videotaped interview— but that others were merely cumulative and thus inadmissible. The court concluded, “And we need a trial date, right?” The Department’s attorney responded, “Yes, Judge, but I will say that at the last court date I indicated to the Court that I don’t have anything over and above what I’ve already presented and [counsel for D.B.] had indicated that we would be willing to stipulate to the testimony of those witnesses ... for trial purposes.” The Court replied,
THE COURT: Well, that’s fine then, but you can — if that’s your intention to rest on that date — .
[COUNSEL FOR D.B.]: We’ll set a date anyway, though; right?
THE COURT: Yeah, and then you’ll have an opportunity to present your testimony or any witnesses you want to present at the hearing.
[COUNSEL FOR D.B.]: But I — I do not anticipate my client testifying so— because of the criminal trial.
THE COURT: Okay. All right, well, let me just give you a date.
That date was December 20, at which time D.B.’s counsel appeared but D.B. was not present. The trial judge indicated that *574 he wanted D.B. to appear, and counsel for D.B. replied, “Judge, just summation this morning.” The court continued the hearing to January 3, 2006.
At the commencement of the hearing on January 3, the trial judge asked, “We’re here for a — final summations?” And counsel for the Department replied, “Yes, Judge, of the trial.” Counsel for the Department began to present a closing argument, during which the trial judge interjected with various questions. The comments of the trial judge during the ensuing discussion suggest the trial court may have believed that D.B. had engaged in the relevant conduct for legitimate reasons and not as an act of sexual battery, or that the acts alleged did not, as a matter of law, constitute abuse sufficient to support an adjudication of dependency. After this discussion and a brief statement by counsel for D.B. that the Department had not presented competent, substantial evidence of abuse, the trial judge indicated that he was dismissing the petition.
The procedural difficulties in this case may have led to some understandable confusion on the part of the trial judge. Nevertheless, the trial judge specifically admitted into evidence, based upon a finding of reliability, child hearsay testimony describing a sexual battery. There is nothing in the record to suggest that there was any legitimate purpose for the described conduct. Indeed, the acts described are of a nature that they would not reasonably be performed by a parent for any purpose other than an abusive one. D.B. apparently chose not to testify because of possible criminal proceedings. The court never suggested that the child’s brief testimony by closed circuit television caused it to reject the extensive hearsay testimony that it had found reliable.
It is frankly a little difficult to determine what evidence the trial court believed was introduced at trial and what evidence was only introduced for purposes of determining the issue of admissibility. Nevertheless, the Department clearly presented pri-ma facie evidence of the alleged acts, and the trial court could not properly dismiss the petition on the grounds that the acts could not constitute abuse as a matter of law.[1]
The combination of the multiple hearings addressing both the merits of the case and the admissibility of the hearsay statements and the ambiguity as to whether the trial court believed it was dismissing this case as a matter of law or after a weighing of the evidence convinces us that the order must be reversed and the matter remanded for a new hearing in a more traditional, orderly process. Given the passage of time and the confusion already existing over the disjointed presentation of the evidence in the initial proceedings, the trial court must conduct a new adjudicatory hearing on remand.
Reversed and remanded.
STRINGER and WALLACE, JJ., Concur.

. In this respect, the dependency statute’s use of the term “dismissal” to reflect an adjudication on the merits of the petition may be a source of some confusion. See § 39.507(4), Fla. Stat. (2005). That is, a dependency court's dismissal of a petition might reflect the equivalent of a directed verdict, or it might reflect a determination on the merits.